IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LYNDON THOMPSON AND PAULA THOMPSON,<br><br>    Plaintiffs,<br><br>v.<br><br>FAY SERVICING, LLC AND PROF-2013-S3 LEGAL TITLE TRUST IV, BY U.S. BANK NATIONAL ASSOCIATION, AS LEGAL TITLE TRUSTEE,<br><br>    Defendants. | No. 3:18-CV-00362-BT |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is a Motion for Summary Judgment (ECF No. 31), filed by Defendants, Fay Servicing, LLC ("Fay") and PROF-2013-S3 Legal Title Trust IV, by U.S. Bank National Association, as Legal Title Trustee ("U.S. Bank") (collectively, "Defendants"), asking the Court to dismiss the claims against them filed by Plaintiffs Lyndon and Paula Thompson ("Plaintiffs"). For the following reasons, the Court GRANTS Defendants' Motion for Summary Judgment.

### **Background**

This lawsuit arises from Fay's foreclosure sale of Plaintiffs' property located at 215 Crane Drive, Grand Prairie, Texas 75052 (the "Property") to U.S. Bank. Compl. 2, ¶ 7 (ECF No. 1). On November 1, 2004, Plaintiffs refinanced their home

loan and executed an Adjustable Rate Note (the "Note") for $109,220.00 payable to World Savings Bank, FSB ("WSB") at a 4.977% yearly interest rate. Def.'s Ex. A-1 at 2 (ECF No. 32-2). The Note was secured by a deed of trust (the "DOT"). Def.'s Ex. A-2 at 3 (ECF No. 32-3). Fay serviced the loan for Plaintiffs. *See* Def.'s Ex. A-4 at 5 (ECF No. 32-5). U.S. Bank became the owner of the rights under the DOT pursuant to an assignment on November 28, 2016. Def.'s Ex. A-3 at 2 (ECF No. 32-4). The DOT's terms require Plaintiffs to pay the Note's principal and interest, as well as any fees and charges, when due. Def.'s Ex. A-2 at 5. The Note also provides that if Plaintiffs fail to make payments as they become due or fail to comply with any condition of the DOT, the lender may sell the Property to enforce the DOT. Def.'s Ex. A-1 at 6.

Plaintiffs filed for Chapter 13 bankruptcy on May 31, 2010. Pl.'s Ex. 5 at 1 (ECF No. 41); Compl. 3, ¶ 10. In June 2016, Wells Fargo (WSB's successor) offered Plaintiffs a Home Affordable Modification Trial Period Plan ("Trial HAMP"), under which Plaintiffs would make monthly payments of $1,205.57 while the bank calculated a permanent modified monthly payment ("Permanent HAMP"). Def.'s Ex. A-5 at 4-6 (ECF No. 32-6). The bankruptcy court approved Plaintiffs' request to incur additional debt to modify their mortgage loan. Compl. 3, ¶ 11; Def.'s Br. Support Mot. Summ. J. 6 n.10 ("Def.'s MSJ Br.") (ECF No. 32). Later, on May 12, 2017, Fay notified Plaintiffs that they were approved for a Permanent HAMP. Def.'s Ex. A-6 at 2 (ECF No. 32-7). The proposed Permanent HAMP provided that Plaintiffs would pay $1,176.19 monthly with a maturity date of October 1, 2056 at

2

a principal balance of $176,512.71. Def.'s Ex. A-7 at 3 (ECF. No. 32-8). This proposed Permanent HAMP "shocked" Plaintiffs, and they refused it. Compl. 4, ¶ 16. Plaintiffs maintain that they opted to "remain on" the Trial HAMP. *Id.* Defendants contend, however, that Plaintiffs made no more than three payments under the Trial HAMP. Def.'s MSJ Br. 6. This, the Defendants maintain, made Plaintiffs delinquent in their responsibilities on the Note. *Id.* As a result, on November 7, 2017, Fay notified Plaintiffs of their delinquency and demanded $66,694.24 in order to cure the default. Def.'s Ex. A-4 at 4 (ECF No. 32-5). Plaintiffs apparently did nothing, so on December 21, 2017, Defendants sent Plaintiffs a notice of acceleration of the Note informing Plaintiffs of a trustee sale of the Property on February 6, 2018. Def.'s Ex. B-1 at 3-6 (ECF No. 32-11). U.S. Bank bought the Property at the sale. Def.'s Ex. B-2 (ECF No. 32-12).

Plaintiffs brought the instant suit on February 13, 2018. By their complaint, Plaintiffs allege eight causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"); (2) violation of duty to furnish accurate credit information under the Fair Credit Reporting Act ("FCRA"); (3) violation of the Texas Debt Collection Act ("TDCA"); (4) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (5) unjust enrichment; (6) breach of contract; (7) quiet title; and (8) negligent servicing. Compl. 6-11, ¶¶ 24-59. Defendants move for summary judgment as to all claims and ask the Court to dismiss all Plaintiffs' causes of action.

In response to Defendants' Motion for Summary Judgment, Plaintiffs filed a document they styled as a "Motion to Compel, Motion to Strike Evidence, Motion for Continuance and Response to Defendant's Motion for Summary Judgment." Pl.'s Mot. & Resp. (ECF No. 35). By this filing, Plaintiffs sought an order compelling Defendants to produce certain documents that Plaintiffs allege were requested but not produced in discovery, continuing the motion for summary judgment pending production of these documents, and striking two of Defendants' exhibits that were allegedly also not provided during discovery. Pl.'s Br. Support Mot. & Resp. 1 (ECF No. 36) ("Pl.'s Resp."). Defendants apparently then supplied the documents Plaintiffs requested, mooting Plaintiffs' motions to compel, to strike, and to continue. Def.'s Reply Pl.'s Mot. & Resp. 2 (ECF No. 46); Pl.'s. Mot. Continue 1-2 (ECF No. 47) ("Defendants have supplemented their discovery response as a result of Plaintiffs['] filing and provided the supplemental discovery . . . "). Plaintiffs later again moved for a continuance to amend the pleadings and to file a supplemental response to Defendant's Motion for Summary Judgment. Pl.'s Mot. Continue 2. The Court denied Plaintiffs' request to amend their complaint. Order of March 28, 2019 (ECF No. 50). However, the Court granted Plaintiffs leave to file a supplemental response. *Id.* Plaintiffs filed a supplemental response (Pl.'s Suppl. Resp. (ECF No. 51)), and Defendants replied (Def.'s Reply Pl.'s Suppl. Resp. (ECF No. 53)). Accordingly, the motion is fully briefed and ripe for determination.

**Preliminary Matters**

Because Plaintiffs have abandoned their contract, quiet title, and unjust enrichment claims, the Court pretermits discussion of those claims and concludes Defendants are entitled to summary judgment with respect to them. And, even if Plaintiffs had not abandoned those claims, they have failed to raise a genuine issue of material fact with respect to them.

When a plaintiff "fails to defend a claim in response to a . . . summary judgment motion, the claim is deemed abandoned." *Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *3 (N.D. Tex. July 2, 2019) (citing *Black v. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1. (5th Cir. 2006); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983)). Although Plaintiffs complaint alleges causes of action for breach of contract, to quiet title, and unjust enrichment, Plaintiffs abandon these claims on summary judgment. Defendants moved for summary judgment on all claims, and Plaintiffs did not respond with respect to their contract, quiet title, or unjust enrichment claims. Indeed, the terms "quiet title" and "unjust enrichment" do not appear at all in either Plaintiffs' original response or supplemental response. Likewise, the word "contract" is completely absent from Plaintiffs' supplemental response, and it only appears in Plaintiffs' original response twice—in discussion of Plaintiffs' negligence claim. Plaintiffs had two opportunities to respond to Defendants' Motion for Summary Judgment. Plaintiffs' failure to argue its contract, quiet title, and unjust enrichment claims in either response to Defendants' Motion for Summary Judgment is an abandonment

of those claims. Defendants are entitled to summary judgment on those claims due to Plaintiffs' abandonment. But even if Plaintiffs had not abandoned these three claims, the Court finds that they have still failed to raise a genuine dispute of fact with respect to them. They have not provided summary judgment evidence that contradicts Defendants' summary judgment evidence on these claims.

Defendant is entitled to summary judgment on Plaintiffs' breach of contract, quiet title, and unjust enrichment claims.

**Legal Standard**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citations omitted). The movant's burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case, which the nonmovant bears the burden of proving at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); Fed. R. Civ. P. 56(e)). The party opposing the summary judgment motion must identify

specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, 2016 WL 6093327, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose a duty on the court to 'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)). All evidence must be viewed in the light most favorable to the party opposing the summary judgment motion. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)).

## Analysis

<u>Plaintiffs' FDCPA Claim Fails as a Matter of Law</u>

"[T]he FDCPA prohibits debt collectors from employing 'false, deceptive, or misleading' practices." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1598 (2016) (quoting 15 U.S.C. § 1692e)). To be liable under the FDCPA, a defendant must be a debt collector under the statute and be engaged in debt-collecting activities. *See Heintz v. Jenkins*, 514 U.S. 291, 292-93 (1995). A debt collector under the FDCPA is any person who uses interstate commerce or the mails in any manner the principal purpose of which is to collect or attempt to collect debts owed or purportedly owed another. 15 U.S.C. § 1692a(6). Mortgage assignees and loan servicing companies are not debt collectors under the FDCPA if the debt was not in default at the time it was assigned by the originator. *Mason v. Freemont Inv. & Loan*, 2017 WL

4512486, at *3 (N.D. Tex. July 26, 2017) (citing 15 U.S.C. § 1692a(6)(F)(iii)) *appeal dismissed sub nom.*, *Mason v. Ocwen Loan Servicing, L.L.C.*, 740 F. App'x 451, 452 (5th Cir. 2018). The statute of limitations to bring an FDCPA claim is one year from the alleged violation.[1] 15 U.S.C. § 1692k(d); *Serna v. Law Office of Joseph Onwuteaka, P.C.*, 732 F.3d 440, 442-43 (5th Cir. 2013).

Plaintiffs allege Defendants violated six provisions of the FDCPA. In particular, they allege Defendants falsely represented the legal status of a debt; represented or implied that nonpayment of the debt would result in wrongful seizure, attachment, or sale of the Property; threatened to take illegal action or action that they did not actually intend to take; communicated or threatened to communicate to others false credit information and failed to communicate that a disputed debt was disputed; used false representation or deceptive means to collect or attempt to collect a debt; and collected unauthorized amounts under the parties' agreement. Compl. 6, ¶ 25. The core of Plainiffs' FDCPA claims, however, appear to derive from the proposal of the Permanent HAMP. *See* Pl.'s Resp. 6 ("Plaintiffs['] FDCPA claim flow[s] from Defendants['] attempts to get Plaintiffs to agree to a permanent loan modification that clearly includes amounts for interest, fees, charges[,] and expenses that are not expressly authorized by the agreement."). Without reaching the merits of Plaintiff's FDCPA claim, the Court concludes that

---

[1] Plaintiffs filed this lawsuit on February 13, 2018. Therefore, to the extent Plaintiffs complain about Defendants' conduct occurring before February 13, 2017, their claims are time-barred.

it fails as a matter of law because Defendants are not debt collectors within the meaning of the FDCPA.

U.S. Bank became owner of the rights under the DOT on November 28, 2016. Ex A-3 at 2. It is unclear from the summary judgment evidence when in time Fay became the loan servicer. However, Plainiffs allege correspondence from Fay as early as October 18, 2016. Compl. 3, ¶ 13. Plaintiffs did not default until November 2017. *See* Ex. A-4 at 4 (alerting Plaintiffs of their default; dated November 2, 2017); Def.'s MSJ Br. 6 (discussing that Plaintiffs made three payments under the Trial HAMP, which ran August to October 2017). Defendants, a mortgage assignee and a loan servicer, were each involved with the loan before official default in November 2017. They are therefore not debt collectors under the FDCPA.

Because Defendants are not subject to the FDCPA, Plaintiffs' FDCPA claims fail as a matter of law. Defendants are therefore entitled to summary judgment with respect to Plaintiffs' FDCPA claim.

Plaintiffs' FCRA Claim Fails as a Matter of Law

The FCRA protects consumer privacy. *Safeco Ins. Co. of Am. v. Burr*, 551, U.S. 47, 52 (2007). It provides that consumers can report to consumer reporting agencies inaccuracies in information published about them. *See* 15 U.S.C. § 1681i(a)(2). The FCRA further requires the consumer reporting agencies to notify the furnishers of the alleged inaccurate information of the dispute. *Id.*; *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002). Thus, any

FCRA action requires that a consumer reporting agency has notified the defendant of some disputed information. *Young*, 294 F.3d at 639. If no consumer reporting agency has reached out to the defendant regarding an inaccuracy, no FCRA duty is triggered. *Id.* at 639-40 (holding FCRA claim failed as matter of law because no evidence proved defendant received notice of a dispute from a consumer reporting agency).

Plaintiffs allege Defendants violated the FCRA by "report[ing] inaccurate credit information after notice from the consumer that the information was inaccurate, in violation of 15 U.S.C. § 1681s-2(a)(1), . . . fail[ing] to correct and update the inaccurate information, in violation of [15] U.S.C. § 1681s-2(a)(2), . . . [and] fail[ing] to notify the credit reporting agencies that the inaccurate information had been disputed, in violation of [15] U.S.C. § 1681s-2(a)(3)." Compl. 6-7, ¶¶ 27-29. Plaintiffs appear to complain that Defendants provided a form to the IRS reporting Plaintiffs' outstanding principal inaccurately, and that conduct violates the FCRA. Pl.'s Suppl. Resp. 3. Plaintiffs do allege that they requested the Consumer Financial Protection Bureau to review their debt. *Id.* However, they do not point to evidence in the summary judgment record indicating that the Consumer Financial Protection Bureau or any other consumer reporting agency notified Defendants of a dispute (*see id.*), and the Court can find none. Without evidence that a consumer reporting agency notified Defendants of a dispute of reported information, Defendants had no duty to Plaintiffs under the FCRA.

Because Defendants had no duty to Plaintiffs under the FCRA, Plaintiffs' FCRA claim fails as a matter of law. Defendants are thus entitled to summary judgment on Plaintiffs' FCRA claim.

### Plaintiffs have not Established a TDCA Claim

The TDCA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Gomez v. Wells Fargo Bank, N.A.*, 2010 WL 2900351, at *3 (N.D. Tex. July 21, 2010); *Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). To prevail on a TDCA claim, a Plaintiff must establish (1) the existence of a consumer debt; (2) that the defendant is a debt collector as defined by the TDCA; (3) that the defendant committed a wrongful act in violation of the TDCA; (4) against the plaintiff; and (5) plaintiff suffered injury as a result of the defendant's wrongful act. *Putty v. Fed. Nat'l Mortg. Ass'n*, 2017 WL 5070423, at *3 (N.D. Tex. Nov. 3, 2017) (citations omitted).

Plaintiffs allege Defendants violated the TDCA by collecting or attempting to collect unauthorized interest or incidental fees, in violation of Texas Finance Code § 392.303(a)(3), and misrepresenting the character, extent, or amount of a consumer debt, in violation of Texas Finance Code § 392.304(a)(8). Compl. 7, ¶¶ 31-32. Plaintiffs do not clearly communicate in their Complaint or their briefs the particular conduct by Defendants they allege violates the TDCA. The Court assumes that the core of Plaintiffs' TDCA claims arise from Defendants' proposal

of the Permanent HAMP.[2] Plaintiffs' TDCA claims fail on the merits; Plaintiffs appear to misunderstand the legal effect of the Trial HAMP. Pl.'s Resp. 7-8 ("Plaintiff has filed a pleading with factual allegations regarding Defendants['] conduct of attempting to force a loan modification upon Plaintiffs and charge exorbitant fees in violation of the [TDCA]."). Indeed, the Trial HAMP provides that it is a "[t]rial period." Def.'s Ex. A-5 at 3. It further states that "[s]ometimes trial periods extend beyond the dates stated," so Plaintiffs must "continue to make [payments] in the same amount by the same day each month." *Id*. Finally, the Trial HAMP clarifies that "a *new principal balance*" will be calculated at the end of the trial period, and any past-due amounts "*including unpaid interest, real estate taxes, insurance premiums, and certain [other] assessments* . . . will be added to [the] mortgage loan balance." *Id*. at 5 (emphasis added).

To the extent Plaintiffs claim the Permanent HAMP is improper and violates the TDCA, they are incorrect. When Defendants presented Plaintiffs with the proposed Permanent HAMP, Plaintiffs did not have the luxury of choosing

---

[2] The parties also discuss a typographical error in the proposed Permanent HAMP. *See* Def.'s MSJ Br. 13; Compl. 4, ¶ 17. To the extent this alleged typographical error is the basis of Plaintiffs' TDCA claim, it fails as a matter of law. The TDCA provides a defense in the event of clerical errors. *See Talamor v. I.C. Sys., Inc.*, 2017 WL 3712186, at *7 (W.D. Tex. Aug. 10, 2017). Moreover, to the extent Plaintiffs' TDCA claim arises from the foreclosure or threatened foreclosure of the Property, it fails as a matter of law. Plaintiffs were in default. Defendants provided the requisite 20-day notice of acceleration and opportunity to cure before foreclosure. *See* Tex. Prop. Code § 51.002(d); Def.'s Ex. A-4 at 4. A mortgagee is also expressly permitted under the TDCA to threaten foreclosure when the mortgagor is in default. *Singha v. BAC Home Loans Servicing, L.P.*, 564 F. App'x 65, 70 (5th Cir. 2014) (citing Tex. Fin. Code § 392.301(b)(3)).

between it and the Trial HAMP. By the terms of the Trial HAMP itself, it was temporary, and a new principal balance *that included certain fees and interest* was forthcoming. Plaintiffs dwell on the fact that the bankruptcy court approved the Trial HAMP. Compl. 3, ¶ 11. Defendants urge, however, that the bankruptcy court simply approved Plaintiffs' request to incur additional debt to modify their mortgage loan. Def.'s MSJ Br. 6 n.10. In either event, the Trial HAMP was clearly temporary. Plaintiffs have supplied no summary judgment evidence indicating it was not or that Defendants represented it would continue after the Permanent HAMP was calculated. Moreover, the Trial HAMP clearly alluded that the principal sum would not be the same under the Permanent HAMP as under the Trial HAMP, and that indeed, it might increase. Plaintiffs have provided no summary judgment evidence indicating Defendants represented otherwise. Therefore, by presenting Plaintiffs with the proposed Permanent HAMP providing for a larger principal than the Trial HAMP, Defendants did not violate the TDCA.

Plaintiffs' TDCA claim fails on the merits because Defendants did not engage in conduct that is wrongful under the TDCA. Therefore, Defendants are entitled to summary judgment on Plaintiffs' TDCA claim.

## Plaintiffs' DTPA Claim Fails as a Matter of Law

"The DTPA grants consumers a cause of action for false, misleading, or deceptive acts or practices." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citing Tex. Bus. & Com. Code § 17.50(a)(1)). The elements of a DTPA claim are as follows: (1) the plaintiff is a consumer; (2) the defendant engaged in

13

false, misleading, or deceptive acts; and (3) these acts constituted a producing cause of the plaintiff's damages. Tex. Bus. & Com. Code § 17.50(a)(1). The DTPA protects consumers; therefore, one must be a consumer within the meaning of the DTPA to take advantage of its protections. *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 724. (5th Cir. 2013). A consumer is one who seeks or acquires goods or services by purchase or lease. *Id.* at 725 (citing Tex. Bus. & Com. Code 17.45(4)). A mortgagor is a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service and that good or service forms the basis of the complaint. *Id.* In other words, "pure loan" transactions are outside the purview of the DTPA. *Id.* When a mortgagor's DTPA claim is based on a loan modification and not the original loan, it is not a loan sought for acquisition of a good or service. *Id.*; *Dawson v. Bank of Am., N.A.*, 605 F. App'x 263, 265-66 (5th Cir. 2015). It is instead a "pure loan" transaction. *Miller* 726 F.3d at 725. Thus, mortgagors modifying their home loan are not consumers under the DTPA. *See id.*

The TDCA is what is known as a DTPA "tie-in" statute; a violation of the TDCA gives rise to a cause of action under the DTPA. *See Burton v. Prince*, 577 S.W.3d 280, 291 (Tex. App.—Houston [14th Dist] 2019, no pet.). However, claimants cannot succeed on a DTPA tie-in claim if the TDCA claim itself fails. *See Franklin v. BAC Home Loans Servicing, L.P.*, 2011 WL 248445, at *4 (N.D. Tex. Jan. 26, 2011) ("Plaintiff relies solely on the alleged violations of the TDCA to 'tie-

in' her claim to the DTPA. However, the DTPA claim fails because the Court has already held that Plaintiff has failed to state a claim under the TDCA.").

Plaintiffs allege multiple violations of the DTPA itself and multiple TDCA tie-in claims. Compl. 7-9, ¶¶ 34-40. However, it is undisputed that Plaintiffs' DTPA claim arises out of a loan modification. *See id.* at 2, ¶ 8 (discussing purchase of home and naming original-loan mortgagee, Benchmark Mortgage, which is not affiliated with this suit). Indeed, Plaintiffs discuss at length in their complaint the refinance of their home loan with WSB, their bankruptcy, their Trial HAMP with Wells Fargo, and, especially, the proposed Permanent HAMP. *See id.* at 3-5, ¶¶ 9-23. Plaintiffs do not point to evidence that indicates the refinancing and subsequent loan modification negotiations were anything but pure loan transactions. Indeed, Plaintiffs only argue that their DTPA claim survives because they are are consumers within the meaning of the TDCA. Plaintiffs' reliance on the TDCA's definition of consumer in this case is misplaced. Whether or not Plaintiffs are consumers under the TDCA is irrelevant, as their TDCA claim fails on its merits. It therefore cannot be used to establish a DTPA claim.

Plaintiffs are not consumers within the meaning of the DTPA. Moreover, their TDCA claim, and any DTPA tie-in claim that could arise with it, fails. Therefore, Defendants are entitled to summary judgment on Plaintiffs' DTPA claim.

## Plaintiffs have not Established a Negligent Servicing Claim

As a threshold matter, there is no cause of action for negligent servicing in Texas. *Price v. Am.'s Servicing Co.*, 2013 WL 1914939, at *8 (N.D. Tex. May 9, 2013). The Court, therefore, construes Plaintiffs' negligent servicing claim as a claim for ordinary negligence. *See id.* (construing negligent servicing claim as a negligence claim in the specific context of a loan-servicing relationship). Under Texas law, the elements of negligence are the existence of a legal duty, breach of that duty, and damages proximately caused by the breach. *Id.* (citing *IHS Cedars Treatment Ctr. of De Soto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). But Texas does not recognize a legal duty of between parties to a contract absent some special relationship between the parties marked by shared trust or an imbalance in bargaining power. *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990); *Scott v. Bank of America, N.A.*, 597 F. App'x 223, 225 (5th Cir. 2014). No such special relationship exists between mortgagor and mortgagee. *Scott*, 597 F. App'x at 225. This is the case even where the mortgagor alleges she trusted the mortgagee during loan modification negotiations. *Id.*

Plaintiffs allege Defendants owed them a duty of care with respect to servicing their loan and that Defendants breached that duty causing Plaintiffs' damage. Compl. 10-11, ¶¶ 52-59. But Plaintiffs concede no duty exists between parties to a contract absent some special relationship. Pl.'s Resp. 8. Plaintiffs simply urge that a special relationship *does* exist here. *Id.* In particular, Plaintiffs argue they relied on Defendants through the modification negotiation process, and

16

Defendants abused their unfair bargaining position given that Plaintiffs were in bankruptcy. *Id.* at 9. However, "[o]ne party's subjectively trusting another during negotiations is . . . not a special relationship of shared trust." *Scott*, 597 F. App'x at 225. And, that Plaintiffs were in bankruptcy likewise has no bearing on their relationship with Defendants or Defendants' bargaining position. In fact, the federal Home Affordable Modification Program, employed to modify Plaintiffs' home loan in this case and employed for the same reason in *Scott*, is a government program aimed at helping those struggling to make their house payments. *See* Def.'s Ex. A-5 at 9. It is not out of the ordinary for a homeowner engaged in Home Affordable Modification Program negotiations with their lender to be in bankruptcy. *See id.* (directing homeowner as to special rules that apply if homeowner is in bankruptcy). Nonetheless, a special relationship does not exist between homeowners and lenders in Home Affordable Modification Program negotiations. *Scott*, 597 F. App'x at 225. *See also Price v. Am.'s Servicing Co.*, 2013 WL 1914939, at *8 (N.D. Tex. May 9, 2013) (dismissing negligent servicing claim against loan servicer because no legal duty existed).

Because no special relationship existed between Plaintiffs and Defendants, Defendants have no duty to Plaintiffs. Defendants, therefore, cannot be liable in negligence to Plaintiffs. Defendants are entitled to summary judgment on Plaintiffs' negligence claim.

## Conclusion

For the reasons stated, the Court GRANTS Defendants' Motion for Summary Judgment (ECF No. 31).

**SO ORDERED**.

November 14, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE